1   ERNEST GALVAN – 196065
    KARA J. JANSSEN – 274762
2   ADRIENNE SPIEGEL – 330482
    LUMA KHABBAZ – 351492
3   ROSEN BIEN
    GALVAN & GRUNFELD LLP
4   101 Mission Street, Sixth Floor
    San Francisco, California 94105-1738
5   Telephone:    (415) 433-6830
    Email:        egalvan@rbgg.com
6                 kjanssen@rbgg.com
                  aspiegel@rbgg.com
7                 lkhabbaz@rbgg.com

8   SUSAN M. BEATY – 324048
    CALIFORNIA COLLABORATIVE
9   FOR IMMIGRANT JUSTICE
    1999 Harrison Street, Suite 1800
10  Oakland, California 94612-4700
    Telephone:    (510) 679-3674
11  Email:        susan@ccijustice.org

    OREN NIMNI*
     Mass. Bar No. 691821
    AMARIS MONTES*
     Md. Bar No. 2112150205
    RIGHTS BEHIND BARS
    416 Florida Avenue N.W. #26152
    Washington, D.C. 20001-0506
    Telephone:    (202) 455-4399
    Email:        oren@rightsbehindbars.org
                  amaris@rightsbehindbars.org

    * *Pro hac vice* application pending

12  Attorneys for Plaintiff

13

14              UNITED STATES DISTRICT COURT

15       NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

16

17  M.C.L.,

18              Plaintiff,

19         v.

20  UNITED STATES OF AMERICA; UNITED
    STATES OF AMERICA FEDERAL
21  BUREAU OF PRISONS, a governmental
    entity; and DARRELL SMITH,
22
                Defendants.
23

Case No. 4:24-cv-04367

**COMPLAINT**

24

25

26

27

28

Plaintiff M.C.L. ("PLAINTIFF") complains against Defendants UNITED STATES OF AMERICA (the "GOVERNMENT"), UNITED STATES BUREAU OF PRISONS ("BOP"), and DARRELL SMITH ("SMITH") (collectively, "DEFENDANTS"), and each of them, as follows:

**NATURE OF ACTION**

1. For years, people incarcerated at the Federal Correctional Institution, Dublin ("FCI Dublin"), a federal female low-security prison with an adjacent satellite camp, have been subjected to rampant, horrific, and ongoing sexual abuse, including but not limited to: rape and sexual assault; manipulation and sexual coercion, including officers entering into relationships with incarcerated individuals and officers forcing incarcerated individuals to undress in order to be released from cells or for exchange of goods; degrading sexual comments; voyeurism; taking and sharing explicit photos; drugging, groping, and other forms of abuse during medical exams; and targeted abuse towards immigrants under threat of deportation. The Federal Bureau of Prisons ("BOP") and employees at every level have been aware of these problems for decades and have failed, and continue to fail to take action to protect those in its care by preventing and addressing rampant staff sexual misconduct.

2. The staff sexual abuse at FCI Dublin became the center of a sprawling criminal investigation, multiple Congressional inquiries, and national media attention. The United States Senate's Permanent Subcommittee on Investigations devoted multiple hearings to addressing its causes and impact, and issued a report in December 2022 describing the abuse as "horrific" and Defendant BOP's investigative practices as "seriously flawed," and concluding that "BOP management failures enabled continued sexual abuse of female prisoners by BOP's own employees."[1]

---

[1] S. PERMANENT SUBCOMM. ON INVESTIGATIONS, REP. ON SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS, 1 (Dec. 13, 2022), https://www.hsgac.senate.gov/wp-content/uploads/imo/media/doc/2022-12-13%20PSI%20Staff%20Report%20-%20Sexual%20Abuse%20of%20Female%20Inmates%20in%20Federal%20Prisons.pdf (hereinafter "Senate Report").

3.      Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to incarcerated people.  Under PREA, the U.S. Department of Justice promulgated detailed mandatory regulations that provide precise procedures that prisons must follow.  The Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

4.      Despite these mandatory protections, while incarcerated at FCI Dublin in 2021, Plaintiff was sexually harassed on numerous occasions by Defendant SMITH.  In doing so, Defendant SMITH violated Plaintiff's Constitutional and statutory rights and California law.

5.      As a result of Defendants' actions, Plaintiff suffered numerous emotional injuries which continue to affect her today.

6.      Plaintiff brings this suit under the United States Constitution Eighth Amendment's prohibition on cruel and unusual punishment.  Plaintiff also brings this suit under the Federal Tort Claims Act ("FTCA") 28 U.S.C. §§ 2671, *et seq.*, under state law, and in connection with the deficient supervision and custodial care provided by various BOP personnel, including Defendant SMITH, within the scope of his employment within the BOP.

**JURISDICTION AND VENUE**

7.      This Court has original subject matter jurisdiction in this action involving claims arising under the United States Constitution pursuant to 28 U.S.C. §§ 1331 and 1346(b).  Plaintiff's claims are predicated, in part, upon the FTCA, 28 U.S.C. §§ 2671, *et seq.*, authorizing actions seeking relief against the United States.

8.      The Court has personal jurisdiction of the Defendants because the alleged incidents occurred within the confines of the State of California.

9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1402(b) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the boundaries of this District, in the County of Alameda.

**PARTIES**

10.     At all times relevant hereto, Plaintiff M.C.L. was incarcerated in the custody of BOP, incarcerated at FCI Dublin located at 5701 8th St., Dublin, CA 94568.  In August 2022, Plaintiff was transferred to the Northwest ICE Processing Center in Tacoma, Washington.  Plaintiff was later deported to Mexico.

11.     Defendant United States of America (hereinafter "United States") is the appropriate defendant for Plaintiff's claims under the Federal Tort Claims Act.  The United States is a sovereign entity that has waived its immunity for certain claims, including the claims set forth herein, and is liable for the acts or omissions of its agents, servants, contractors, and employees that occur within the scope of their employment.

12.     At all times relevant hereto, Defendant United States, acting through the BOP, was responsible for the operation, control, supervision, policy, practice, implementation, and conduct of all BOP matters including at FCI Dublin and was responsible for the hiring, retention, training, supervision, management, discipline, and conduct of all BOP personnel, including but not limited to Defendant SMITH.

13.     In addition, at all relevant times, United States was responsible for enforcing the rules of the BOP, and for ensuring that BOP personnel obey the Constitution and laws of the United States.

14.     Defendant DARRELL SMITH ("Defendant SMITH") was an officer at FCI Dublin during the time period relevant to the events herein and is sued in his individual capacity.  While performing the acts and omissions that Plaintiff alleges in this complaint, Defendant SMITH was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

15.     At all times relevant hereto, Defendant United States, acting through the BOP, hired Defendant SMITH to serve as a "correctional officer" and "law enforcement officer" within the meaning and powers of 28 U.S.C. § 2680(h).

16.     While acting and failing to act as alleged herein, Defendants had complete custody and total control of Plaintiff, who was dependent upon Defendants for personal

security and necessities.

17.     In performing the acts and/or omissions contained herein, Defendants acted under color of federal law, and each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff.  Each of them knew or should have known that their conduct, attitudes, actions, and omissions were a threat to Plaintiff and to their constitutionally and statutorily protected rights.  Despite this knowledge, Defendants failed to take steps to protect Plaintiff and to ensure that their rights were adequately protected while in the custody of Defendants.

18.     At all times relevant hereto, each Defendant was the agent, representative, or employee of each other Defendant.  At all times relevant hereto, each Defendant was acting within the course and scope of said alternative agency, representation, or employment and was within the scope of their authority, whether actual or apparent.  At all times relevant hereto, each Defendant was the authorized agent, partner, servant, or contractor of each other Defendant, and the acts and omissions herein alleged were done by them acting through such capacity, within the scope of their authority, with the permission, ratification, approval, and consent of each other Defendant.  Accordingly, each of them is jointly and severally liable to Plaintiff.

19.     Individual Defendant SMITH further directly harassed, demeaned, and degraded Plaintiff as alleged herein.

**CONDITIONS PRECEDENT TO FEDERAL TORT CLAIMS ACT CLAIMS**

20.     Plaintiff brings claims under the Federal Tort Claims Act, asserted against the United States of America.

21.     Plaintiff exhausted these claims against the United States in accordance with the requirements of the FTCA.

22.     On February 28, 2023, Plaintiff submitted a "Claim for Damage, Injury, or Death" to the BOP as a PREA victim involving staff at FCI Dublin in the sum of $10,000,000.00.  The BOP denied her administrative claim on July 15, 2024.

## JURY DEMAND

23.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues and claims in this action that are so triable.

## FACTUAL ALLEGATIONS

**I.     Federal Law Requires BOP to Take Action to Prevent and Appropriately Respond to Reports of Staff Sexual Misconduct**

24.     Prison staff sexual abuse of incarcerated people constitutes a form of torture that violates the Eighth Amendment. *See Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020).

25.     The Prison Rape Elimination Act ("PREA") of 2003 required the Attorney General to promulgate rules to prevent sexual abuse in prison facilities. *See* 34 U.S.C. § 30307.  In 2012, the U.S. Department of Justice issued regulations designed to "prevent, detect, and respond to prison rape." *See* 28 C.F.R. § 115, 77 Fed. Reg. No. 119 (June 20, 2012).  These regulations were immediately binding on BOP facilities. *Id.*

26.     Under PREA regulations, BOP is required to "train all employees who may have contact with inmates" on the following: its "zero-tolerance policy for sexual abuse and sexual harassment"; prevention, reporting, detection, and response to such behavior; "the right of inmates to . . . be free from retaliation for reporting sexual abuse and sexual harassment"; signs and dynamics of sexual abuse in confinement, and "common reactions of … victims"; and "how to avoid inappropriate relationships with inmates." *Id.* § 115.31(a).  The training must be "tailored to the gender of the inmates at the employee's facility," and the agency must conduct a refresher training on PREA standards every two years. *Id.* § 115.31(b)–(c).  In off years from the training, "the agency shall provide refresher information on current sexual abuse and sexual harassment policies." *Id.* § 115.31(c).

27.     PREA regulations mandate staff reporting.  BOP must "require all staff to report immediately . . . any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the

agency; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation." 28 C.F.R. § 115.61(a).

28.     Per PREA regulations, administrative investigations of alleged sexual abuse by a staff member or incarcerated person are required to proceed "promptly, thoroughly, and objectively for all allegations, including third-party and anonymous reports." *Id.* § 115.71(a).  Investigators must be specially trained in sexual abuse investigations and must "gather and preserve direct and circumstantial evidence," including interviewing "alleged victims, suspected perpetrators, and witnesses" and "shall review prior complaints and reports of sexual abuse involving the suspected perpetrator." *Id.* § 115.71(c)-(b).  The agency is prohibited from determining an alleged victim's credibility based on their "status as inmate or staff." *Id.* § 115.71(e).  Investigations are further required to "include an effort to determine whether staff actions or failures to act contributed to the abuse." *Id.* § 115.71(f).  "The departure of the alleged abuser or victim from the employment or control of the facility or agency shall not provide a basis for terminating an investigation." *Id.* § 115.71(j).

29.     Substantiated allegations of potentially criminal conduct must be referred for prosecution and the agency must retain written reports of investigations for five years beyond the end of the staff member's employment. *Id.* § 115.71(h)–(i).  After investigating an incarcerated person's allegation that they were abused, BOP must inform that person of whether their allegation was found to be substantiated, unsubstantiated, or unfounded, even if the investigation was completed by another agency. *Id.* § 115.73(a)–(b).  The presumptive disciplinary sanction for substantiated allegations of sexual abuse is termination. *Id.* § 115.76(b).

30.     PREA also includes measures designed to prevent staff retaliation following incarcerated persons' reports of abuse.  PREA requires that BOP establish a policy to prevent retaliation, and that staff monitor retaliation, provide "emotional support services for inmates . . . who fear retaliation," and monitor for at least 90 days the conduct and

1  treatment of incarcerated people who report abuse.  *Id.* § 115.67.  These protective

2  measures include strict limits on the use of administrative segregation.  The regulations

3  provide: "Inmates at high risk for sexual victimization shall not be placed in involuntary

4  segregated housing unless an assessment of all available alternatives has been made, and . .

5  . there is no available alternative means of separation from likely abusers.  If a facility

6  cannot conduct such an assessment immediately, the facility may" hold the individual in

7  segregated housing for "less than 24 hours while conducting the assessment."  *Id.* §

8  115.43(a).  Any incarcerated person placed in protective custody for this purpose "shall

9  have access to programs, privileges, education, and work opportunities to the extent

10  possible." *Id.* § 115.43(b).

11       31.      Defendants repeatedly violated these regulations.  From inadequate training,

12  to lack of confidential reporting mechanisms and access to outside support services, to

13  failures in administrative investigations, widespread misuse of administrative segregation,

14  and rampant staff retaliation, its actions and failures to act created an environment that

15  exposed Plaintiff to an unconscionable risk of sexual violence.  As one survivor of staff

16  sexual abuse at Dublin remarked at the trial of former Warden Garcia, PREA "really

17  doesn't exist in Dublin."  Transcript at 401, *United States v. Garcia*, No. CR-21-00429-

18  YGR (N.D. Cal. Nov. 29, 2022).

19  **II.      FCI Dublin Leadership and Staff Allowed Sexual Assault to Flourish.**

20       32.      Eight former officers—including former Warden Ray Garcia, a former

21  chaplain, and Defendant SMITH—have been charged with sexual misconduct for incidents

22  spanning from 2019 into 2021, with more charges likely forthcoming.  *See United States v.*

23  *Garcia*, No. 4:21-cr-00429-YGR (N.D. Cal.) (sentenced to 70 months in prison and 15

24  years of supervised released following jury trial); *United States v. Highhouse*, No. 4:22-cr-

25  00016-HGS (N.D. Cal.) (sentenced to 84 months in federal prison and 5 months of

26  supervised release following guilty plea); *United States v. Chavez*, No. 4:22-cr-00104-

27  YGR-1 (N.D. Cal.) (sentenced to 20 months in federal prison and 10 years of supervised

28  release following guilty plea); *United States v. Klinger*, No. 4:22-cr-00031-YGR (N.D.

1    Cal.) (plead guilty to three counts of sexual abuse of a ward); *United States v. Bellhouse*,

2    No. 4:22-cr-00066-YGR (N.D. Cal.) (sentenced to 63 months in federal prison and 5 years

3    of supervised release following jury trial); *United States v. Smith*, No. 4:23-cr-00110-

4    YGR-1 (charges pending); *United States v. Nunley*, No. 4:23-cr-00213-HSG (N.D. Cal.)

5    (awaiting sentencing following guilty plea for 4 counts of sexual abuse of a ward, 5 counts

6    of abusive sexual contact, and 1 count of false statements to a government agency); *United*

7    *States v. Jones*, No. 4:23-cr-00212-HSG (N.D. Cal.) (sentenced to 96 months in federal

8    prison and 10 years of supervised release following guilty plea for 6 counts of sexual abuse

9    of a ward and 1 count of false statements to a government agency).

10        33.    In May 2023, Defendant Officer SMITH was indicted on 12 counts for

11   sexually abusing three incarcerated women and is currently awaiting trial.  Defendant

12   SMITH—widely known as "Dirty Dick Smith"—abused dozens of incarcerated women

13   beginning as early as 2015 and continuing until at least August 2021.

14        34.    Warden Garcia was the associate warden at FCI Dublin between December

15   2018 and November 2020, and the warden of FCI Dublin from November 2020 to July

16   2021 – a time that overlapped with Plaintiff being abused by Defendant SMITH.  As the

17   warden, Garcia was responsible for safekeeping, care, protection, discipline, programming,

18   and release of inmates incarcerated at FCI Dublin.  Warden Garcia was also responsible

19   for hiring, training, and supervising/managing staff, and determining operating procedures

20   and policies.

21        35.    Warden Garcia was found guilty of three counts of having sexual contact

22   with an incarcerated person, four counts of abusive sexual contact, and one count of lying

23   to the FBI.  Warden Garcia was sentenced to 5 years and 10 months in prison.

24        36.    Warden Garcia led training on the Prison Rape and Elimination Act and

25   chaired the audit of FCI Dublin under the PREA.  Thus, the man responsible for reporting

26   incidents to the government and teaching inmates how to report rape was in fact a serial

27   rapist of incarcerated people, and he was clearly tolerating and allowing abuse by many

28   more of his underlings, including Defendant SMITH.

37.     Warden Garcia had actual knowledge that the other correctional officers under his supervision were sexually assaulting inmates before and after Plaintiff was abused.  Despite this knowledge, Warden Garcia did not do anything to stop it, even though he had a duty to do so.  Due to the fact that Warden Garcia had knowledge of prior sexual abuse at FCI and failing to do anything about it, it allowed FCI agents, representatives, and employees to abuse Plaintiff.

38.     Warden Garcia had actual knowledge that inmates complained about the assaults.  Warden Garcia knew or should have known that the inmates were subjected to retaliation.  Because Defendants did not investigate complaints of abuse and harassment and did not do anything to stop it, inmates, including Plaintiff, were abused.  Had Warden Garcia taken reasonable actions, which he was under a legal duty to perform, Plaintiff would not have been abused.  Warden Garcia's intentional indifference to inmate abuse was a substantial factor in Plaintiff suffering abuse.

39.     PREA guidelines and FCI Dublin policies and procedures required all inmate complaints of sexual assault and sexual abuse filed or reported internally be reported to Warden Garcia.  During Garcia's tenure, complaints of sexual assaults of inmates by correctional officers and/or staff were reported.

40.     With knowledge of prior abuse against inmates by FCI Dublin, representatives, and employees, Warden Garcia failed to protect the inmates and turned a blind eye.  Such behavior set the tone for rape culture at FCI Dublin, garnering Garcia and his subordinate correctional officers and employees the nickname – "the Rape Club."

41.     Further, Warden Garcia and others inadequately supervised and trained the prison's correctional officers and other employees, including Defendant SMITH.  The UNITED STATES failed to supervise which was a substantial factor in causing Plaintiff's abuse.

42.     Defendants repeatedly violated the law.  From inadequate training, to lack of confidential reporting mechanisms and access to outside support services, to failures in administrative investigations, widespread misuse of administrative segregation, and

rampant staff retaliation, their actions—and failures to act—created an environment that exposed Plaintiff to an unconscionable risk of sexual violence.  As one survivor of staff sexual abuse at Dublin remarked at the trial of Warden Garcia, PREA "really doesn't exist in Dublin."  Transcript at 401, *United States v. Garcia*, No. CR-21-00429-YGR (N.D. Cal. Nov. 29, 2022).

**III.    Plaintiff was Repeatedly Sexually Harassed by Defendant SMITH.**

43.    Defendant SMITH's harassment took place over many months in 2021.

44.    Plaintiff's cellmate was in a relationship with Defendant SMITH, and he often came to their cell when her cellmate was cleaning their cell in her underwear and watched her clean.  He often brought Plaintiff's cellmate gifts, sang songs with her, and messaged her on Corrlinks, the prison emailing system.  Plaintiff never reported anything to other officers because she was afraid Defendant SMITH would begin harassing or retaliating against her.

45.    When her cellmate was transferred, Defendant SMITH began directing his sexual harassment toward Plaintiff.

46.    Around Summer 2021, Plaintiff was cleaning the showers when she suddenly felt Defendant SMITH watching her silently.  As he watched her, he said, "Oh, I wish I could get you outside."  She knew this meant something sexual, but she tried to ignore it.

47.    Days later, Plaintiff was cleaning and ironing her clothes in the dorm.  She saw Defendant SMITH standing in one of the empty cells on the top floor, and he prompted her to come into the empty cell with him to engage in sexual activity by saying, "Come in here with me."  She tried to ignore his sexual advances again and continued ironing her clothes.  He then came and stood next to her, staring at her again.

48.    Plaintiff was frightened because Defendant SMITH already had a reputation of sexually abusing and harassing women, and he was known by other incarcerated women as "Dirty Dick Smith."

49.    In late September or early October 2021, Plaintiff was walking in the lobby

of her housing unit when Defendant SMITH saw her without a mask and told her she would get a shot if she did not have a mask on. Plaintiff retreated back to her room to fold clothes and get ready for bed. Defendant SMITH appeared, opened the door to her cell, came in, and left the door nearly closed. Defendant SMITH asked, "Do you have girlfriend?" When Plaintiff said no, Defendant SMITH responded, "You need one. You need somebody who can make you happy." Plaintiff asked him to leave her cell. Defendant SMITH then asked, "Do you want to see the tattoo I have down there?" A friend came into Plaintiff's cell before she could answer and told him that he could not be in her cell. Defendant SMITH responded, "I can do whatever I want." He laughed and left the cell.

50.     Later that same week, Defendant SMITH came back to Plaintiff's cell. Defendant SMITH was not the unit officer for her unit so there was no reason to be at Plaintiff's door or her unit again. He spoke to her roommate for a while and as he left, he blew kisses at Plaintiff.

51.     That same night, another woman in her dorm told Plaintiff that she saw Defendant SMITH staring at her through the window of her cell at night and that he looked like he was stalking her.

52.     These incidents with Defendant SMITH, in conjunction with the common knowledge that Defendant SMITH had sexually assaulted women at FCI Dublin, made Plaintiff feel terrified Defendant SMITH was going to rape her.

53.     Plaintiff experienced sexual abuse in her childhood, in which her abuser entered her room at night to sexually abuse her. This harassment from Defendant SMITH caused her extreme emotional distress, as it triggered her trauma from her childhood abuse and gave her flashbacks. In these instances of harassment, Plaintiff often blacked out and froze from fear.

54.     Plaintiff was so anxious that she often was afraid to shower because the showers had no cameras, and she was afraid Defendant SMITH could sexually assault her there. This meant she only felt safe to shower when she was with other people.

**IV.    Plaintiff Was Threatened and Subject to Retaliation After She Reported Her Abuse.**

55.    Plaintiff was afraid to report Defendant SMITH's harassment because all the officers knew and were complicit in the sexual abuse in the facility.

56.    Even though Plaintiff was terrified, Plaintiff attempted to report her abuse on October 14, 2021.  Plaintiff reported Defendant SMITH's harassment to Dr. Townsend, a psychologist in the facility, who told her to report the abuse to the Special Investigative Specialist (SIS), Lieutenant Putnam.

57.    Lieutenant Putnam interviewed Plaintiff twice.  Putnam sent her to a medical appointment and gave her a psychological appointment.  Yet, none of the therapists she spoke to spoke Spanish, her primary language, so they were unable to assist Plaintiff.

58.    Putnam told Plaintiff to avoid Defendant SMITH and to not be alone with him.  But there was no way to avoid him when he continued to work as an officer in the prison.

59.    Plaintiff also reported her experience during a visit from the Regional Director of the Bureau of Prisons (BOP).  She reported Defendant SMITH's harassment to a BOP representative, Ms. Ozuna, who stated that there were other reports about Defendant SMITH.

60.    Instead of helping her, Ms. Ozuna took her information and said, "It's normal for that to happen to women like you, you are pretty."  Plaintiff never heard from her or BOP leadership again.

61.    Two or three days after Plaintiff made reports about Defendant SMITH, he threatened her, saying, "I know you've got ten months left here and that you are undocumented."  He continued, "I know people in the Mexican Cartel and they will find you." Following her release from FCI Dublin, Plaintiff was transferred to ICE custody and ultimately deported to Mexico. She is now permanently separated from her family, struggling to support herself, living in hiding and in constant fear for her life.

62.    After Plaintiff reported, officers also began conducting invasive drug tests on

1    her without cause.  Every week, Plaintiff was called to the lieutenant's office to take a drug

2    test in which she had to take off her pants, stay naked from her waist down, and pee while

3    an officer watched her.  She had never been tested with this frequency and so invasively

4    until she reported the sexual harassment.

5        63.    If Plaintiff ever refused, they threatened to take her to the Special Housing

6    Unit (SHU), the unit in the facility that acted as solitary confinement.

7        64.    Plaintiff reported this retaliation to the new warden, Warden Jusino, but the

8    Warden said there was only record of this occurring once.  Plaintiff informed the Warden

9    that she was drug tested many times, not just once.  The Warden noted the information, but

10   nothing ever came of it, and she was never given receipts of her drug tests.

11       65.    Despite this retaliation, Plaintiff also reported her experiences to federal law

12   enforcement, and participated in interviews with the U.S. Attorney's Office, Federal

13   Bureau of Investigations, and the Department of Justice Office of the Inspector General.

14   She has continued to support the investigation even after being detained by ICE and

15   deported, and has been told she will be subpoenaed to testify at Defendant SMITH's

16   upcoming criminal trial.

**FIRST CLAIM FOR RELIEF**
**(Eighth Amendment, Cruel and Unusual Punishment)**
*Plaintiff against Defendant SMITH*

19       66.    Plaintiff incorporates by this reference the allegations contained in the

20   preceding paragraphs as if set forth fully herein.

21       67.    Defendant SMITH subjected Plaintiff to serious bodily harm as defined by

22   the Eight Amendment when he sexually harassed Plaintiff.

23       68.    Defendant's actions described here caused the Plaintiff's physical,

24   emotional, and constitutional harms, and she has a claim for damages for such violations

25   under ongoing deprivation of rights secured by the United States Constitution under the

26   Eighth Amendment.

27       69.    This claim for damages is cognizable under *Bivens v. Six Unknown Named*

28   *Agents*, 403 U.S. 388 (1971) because it claims the same harm and injury as recognized in

1  *Carlson v. Green* 446 U.S. 14 (1980) and *Farmer v. Brennan* 511 U.S. 825 (1994), two

2  recognized *Bivens* contexts.

3  WHEREFORE, PLAINTIFF requests relief as outlined below.

4  **SECOND CLAIM FOR RELIEF**
**(Intentional Infliction of Emotional Distress ("IIED") – California common law)**

5  ***Plaintiff Against the United States***

6  70.  Plaintiff incorporates by this reference every allegation in the preceding

7  paragraphs as if fully set forth herein.

8  71.  Plaintiff brings this claim against the United States under the FTCA based on

9  acts and/or omissions of Defendant United States and all other Defendants while working

10  in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all

11  relevant times were acting within the scope of their employment as federal employees in

12  their official uniforms during work hours.

13  72.  A person is liable for IIED when the defendant engages in outrageous

14  conduct, when the defendant intended to cause plaintiff to suffer emotional distress or

15  engaged in the conduct with reckless disregard to the probability of causing plaintiff to

16  suffer emotional distress, the plaintiff suffered emotional distress, and the outrageous

17  conduct was a cause of the severe emotional distress.

18  73.  Defendant United States, individually or through its agents, servants,

19  contractors, and/or employees, engaged in extreme and outrageous conduct by subjecting

20  Plaintiff to sexual harassment while incarcerated in their custody, through the above-

21  described acts and omissions.

22  74.  Plaintiff's injuries and damages were caused by intentional torts perpetrated

23  by Defendants.  Under 28 U.S.C. § 2680(h), Defendant United States is liable for

24  intentional torts perpetrated by its agents, including correctional officers, that occurred

25  within the scope of their employment under color of federal law.

26  75.  At all relevant times, Defendants were acting under color of law by

27  supervising, disciplining, overseeing, monitoring, controlling, directing, restraining, and

28  imprisoning Plaintiff within the scope of their employment for the United States.

76.     Defendants used their authority as law enforcement officers to sexually assault and harass Plaintiff, and as a direct and proximate cause of this conduct Plaintiff has suffered psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

77.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

WHEREFORE, PLAINTIFF requests relief as outlined below.

**THIRD CLAIM FOR RELIEF**
**(Sexual Harassment - Cal. Civ. Code § 51.9)**
***Plaintiff Against the United States***

78.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

79.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

80.     A person is liable for sexual harassment when a special relationship exists between a plaintiff and person where there is a considerable imbalance of power; the defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or hostile nature based on gender, that were unwelcome and pervasive or severe; and the plaintiff has suffered or will suffer economic loss or personal injury including emotional distress or violation of a statutory or constitutional right.

81.     There exists in FCI Dublin, as all prisons, an extreme imbalance of power between the officers and the incarcerated individuals.  Officers control every aspect of incarcerated persons' lives.  In addition to this always-present imbalance of power, the problem is compounded by retaliation against those who report misconduct.

82.     For purposes of Cal. Civ. Code § 51.9, a special relationship exists/existed

1  between Defendants and Plaintiff due to the coercive power of the officers' positions.

2      83.    Defendants in this special relationship with Plaintiff violated Cal. Civ. Code

3  § 51.9 by repeatedly sexually harassing her.

4      84.    Plaintiff has suffered emotional distress as a result, including psychological

5  trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical

6  and economic injuries.

7      85.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the

8  United States for the wrongful acts/omissions of its employees.

9      WHEREFORE, PLAINTIFF requests relief as outlined below.

10  **FOURTH CLAIM FOR RELIEF**
**(Tom Bane Civil Rights Act– Cal. Civ. Code § 52.1)**

11  *Plaintiff Against the United States*

12      86.    Plaintiff incorporates by this reference every allegation in the preceding

13  paragraphs as if fully set forth herein.

14      87.    Plaintiff brings this claim against the United States under the FTCA based on

15  acts and/or omissions of Defendant United States and all other Defendants while working

16  in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all

17  relevant times were acting within the scope of their employment as federal employees in

18  their official uniforms during work hours.

19      88.    A person interferes with another's civil rights if the person uses or attempts

20  to use threats, intimidation, or coercion to interfere with the exercise or enjoyment of rights

21  secured by the Constitution or state or federal laws.

22      89.    Speech alone is sufficient where the threatened person reasonably fears

23  violence because the person threatening had the apparent ability to carry out the threat.

24  Because of the coercive, and sometimes violent, nature of a prison and the fact that

25  survivors had seen retaliation before, Plaintiff reasonably feared violence by Defendants.

26      90.    Defendant United States through its agents, servants, contractors, and/or

27  employees violate Plaintiff's rights, including but not limited to, their right of protection

28  from sexual harassment, imposition of punishment without due process, and cruel and

1    unusual punishment.  Defendants violated these rights by threats, intimidation, or coercion.

2        91.    As a direct and proximate result of the foregoing, Plaintiff has suffered

3    emotional distress as a result, including psychological trauma, distress, anxiety,

4    depression, loss of quality of life and dignity, as well as medical and economic injuries.

5        92.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the

6    United States for the wrongful acts/omissions of its employees.

7        WHEREFORE, PLAINTIFF requests relief as outlined below.

8    **FIFTH CLAIM FOR RELIEF**
**(Invasion of Privacy – California common law)**

9    ***Plaintiff Against the United States***

10       93.    Plaintiff incorporates by this reference every allegation in the preceding

11   paragraphs as if fully set forth herein.

12       94.    Plaintiff brings this claim against the United States under the FTCA based on

13   acts and/or omissions of Defendant United States and all other Defendants while working

14   in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all

15   relevant times were acting within the scope of their employment as federal employees in

16   their official uniforms during work hours.

17       95.    The elements of invasion of privacy are (1) whether the defendant

18   intentionally intruded, physically or otherwise, upon the solitude or seclusion, private

19   affairs or concerns of the plaintiff; (2) the intrusion was substantial, and of a kind that

20   would be highly offensive to an ordinarily reasonable person; and (3) the intrusion caused

21   plaintiff to sustain injury, damage, loss, or harm.

22       96.    Defendants intentionally and substantially intruded upon Plaintiff's seclusion

23   when they repeatedly sexually harassed her.

24       97.    Such intrusions were substantial and highly offensive to an ordinarily

25   reasonable person due to their sexual and degrading nature.

26       98.    As a direct and proximate result of the foregoing, Plaintiff has suffered

27   emotional distress as a result, including psychological trauma, distress, anxiety,

28   depression, loss of quality of life and dignity, as well as medical and economic injuries.

1   99.   Pursuant to the FTCA, Plaintiff is entitled to recover damages from the

2   United States for the wrongful acts/omissions of its employees.

3   WHEREFORE, PLAINTIFF requests relief as outlined below.

4   **SIXTH CLAIM FOR RELIEF**
    **(Negligence—California common law)**
5   ***Plaintiff against the United States***

6   100.   Plaintiff incorporates by this reference every allegation in the preceding

7   paragraphs as if fully set forth herein.

8   101.   Plaintiff brings this claim against the United States under the FTCA based on

9   acts and/or omissions of Defendant United States and all other Defendants while working

10  in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all

11  relevant times were acting within the scope of their employment as federal employees in

12  their official uniforms during work hours.

13  102.   At all relevant times, Defendant United States hired various correctional

14  and/or administrative personnel at FCI Dublin, including but not limited to wardens,

15  associate wardens, captains, lieutenants, unit managers, counselors, correctional officers,

16  and investigators.

17  103.   At all relevant times, FCI Dublin personnel, including individual Defendant

18  SMITH, held themselves out to Plaintiff as correctional and/or administrative personnel

19  with the knowledge, capacity, and ability to provide due care in accordance with standards

20  of reasonable care common and acceptable in the community.

21  104.   Duty. United States and all other Defendants had a custodial duty, as well as

22  a mandatory statutory obligation under PREA and BOP policy, to protect Plaintiff, who

23  was incarcerated by the United States, from foreseeable harm, including sexual

24  harassment.  This duty was non-delegable.

25  105.   BOP policy forbids staff in engaging with sexual activity with inmates and

26  staff may not allow other people to engage in sexual activity.  BOP policy makes clear that

27  all sexual activity with inmates, even non-physical, is against policy.  BOP states that there

28  is no such thing as consensual sex between staff and inmates.

106. United States and all other Defendants also had a general duty of care to Plaintiff to act as a reasonable prudent person would under similar circumstances.

107. It was the Defendants' duty to maintain, operate, and control FCI Dublin as a safe and secure space for incarcerated people.

108. It was the Defendants' duty to protect incarcerated people from foreseeable harm inflicted by BOP personnel.

109. Breach of Duty. The United States, individually or through its agents, servants, contractors, and/or employees acting within the scope of their employment, breached those duties by failing to supervise and operate FCI Dublin in a manner that would have prevented ongoing sexual harassment and retaliation against Plaintiff.

110. A reasonable administrator would have complied with PREA regulations, including safeguarding against retaliation for those who report misconduct.

111. A reasonable administrator would also not have exposed Plaintiff to the danger of ongoing sexual harassment.

112. Agents, servants, contractors, and/or employees of Defendant United States knew or should have known about the ongoing sexual harassment against Plaintiff, and in breaching their duty directly exposed Plaintiff to an unreasonable risk of bodily injury and sexual assault.

113. Despite notice, Defendant United States, through its employees, did not take reasonable, available measures to abate the risk of sexual harassment to Plaintiff in violation of federal regulations and BOP policy.

114. The United States, through its employees also failed to train, retain, and supervise officers as well as monitor and investigate them.

115. When the employer is aware of its employees' tortious conduct, as it was here, and it ignores or assists in it, retention of employees does not represent legitimate policy considerations warranting discretion.

116. At all relevant times, each of the Defendants stood in such a relationship with the other Defendants as to make each of the Defendants liable for the acts and

1   omissions of all other Defendants in regard to their treatment of Plaintiff.

2   117.   Causation. The United States' negligence in administering FCI Dublin is a

3   direct and proximate cause of Plaintiff's injuries, including psychological trauma, distress,

4   anxiety, depression, loss of quality of life and dignity, as well as medical and economic

5   injuries.

6   118.   Officers' employment at FCI Dublin was essential to their commission of

7   tortious misconduct, which would not have happened absent their employment and

8   privileges.

9   119.   Defendant officers' conduct was grossly negligent as they showed complete

10   disregard for rights and safety of Plaintiff.

11   120.   It was foreseeable to FCI Dublin personnel that Plaintiff was at risk of

12   imminent serious harm including sexual harassment.

13   121.   Pursuant to the FTCA, Plaintiff is entitled to recover damages from the

14   United States for the wrongful acts/omissions of its employees.

15   WHEREFORE, PLAINTIFF requests relief as outlined below.

16   **SEVENTH CLAIM FOR RELIEF**
    **(Negligent Infliction of Emotional Distress ("NIED") – California common law)**
17   ***Plaintiff Against the United States***

18   122.   Plaintiff incorporates by this reference every allegation in the preceding

19   paragraphs as if fully set forth herein.

20   123.   Plaintiff brings this claim against the United States under the FTCA based on

21   acts and/or omissions of Defendant United States and all other Defendants while working

22   in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all

23   relevant times were acting within the scope of their employment as federal employees in

24   their official uniforms during work hours.

25   124.   The elements of an NIED claim are as follows: (1) the defendant engaged in

26   negligent conduct/a willful violation of a statutory standard; (2) the plaintiff suffered

27   serious emotional distress; and (3) the defendant's negligent conduct/willful violation of

28   statutory standard was a cause of the serious emotional distress.

1    125.   Defendant officers and the United States engaged in negligent conduct and

2  willful violations of statutory standards by repeatedly sexually harassing Plaintiff,

3  constituting both extreme and outrageous behavior and the negligence.

4    126.   The United States' negligence in administering FCI Dublin is a direct and

5  proximate cause of Plaintiff's injuries, including psychological trauma, distress, anxiety,

6  depression, loss of quality of life and dignity, as well as medical and economic injuries.

7    127.   Pursuant to the FTCA, Plaintiff is entitled to recover damages from the

8  United States for the wrongful acts/omissions of its employees.

9    WHEREFORE, PLAINTIFF requests relief as outlined below.

10                            **PRAYER FOR RELIEF**

11    WHEREFORE, PLAINTIFF prays for judgment against Defendants UNITED

12  STATES OF AMERICA, UNITED STATES OF AMERICA FEDERAL BUREAU OF

13  PRISONS, and DARRELL SMITH, and each of them, as follows:

14    128.   An award of compensatory, punitive, and nominal damages to Plaintiff in an

15  amount to be determined at trial;

16    129.   An award to Plaintiff, pursuant to 42 U.S.C. §§ 1988 and 12205 of the costs

17  of this suit and reasonable attorneys' fees and litigation expenses; and

18    130.   For such other and further relief as this Court may deem just and proper.

19

20  DATED:  July 19, 2024          Respectfully submitted,

21                                ROSEN BIEN GALVAN & GRUNFELD LLP

22                                By: */s/ Kara Janssen*
23                                    Kara Janssen

24                                Attorneys for Plaintiff

25

26

27

28